## ASSESSMENTS FOR SANITARY SEWERS.

Circuit Court of Lucas County.

JOSEPH W. CLOSE v. PETER PARKER, TREASURER, ET AL.

Decided, January 18, 1908.

*Sewers—Improvement Change in Depth of, During Construction—Foot Frontage Assessment for Sanitary Sewer—Not Affected by Proximity of Public Park—Intersections—Rule Placing Cost of, on Municipality—Does not Apply to the Crossing of a Street by a Sanitary Sewer—Burden of Proof as to Negative Fact.*

1. Where in the construction by a municipality of a local sewer for sanitary purposes, by the inadvertence of an assistant engineer employed to fix the grade thereof the contract or specifications is departed from as to the depth of the sewer but without affecting its cost or efficiency, and the error is not discovered until after the work of construction is completed, and no substantial injury to the rights of the lot owners is apparent, the assessment against such lot owners will not be enjoined.

2. In an assessment upon lots to defray the cost of a local sanitary sewer, the municipality is not required to make a deduction because of the proximity of a public park which does not directly abut thereon.

3. The provisions of the municipal code as to improvements for which special assessments are made, that "the corporation shall pay the cost of intersections" has reference to the parts of street improvements at the intersection of streets one with another, and has no application to the crossing of a street by a sewer for purposes of local sanitary drainage.

4. One seeking to enjoin an assessment levied by a city council on the ground that a statutory requirement has been omitted, has the burden of establishing such fact by evidence; and it is not incumbent on the city to show affirmatively its compliance with the statute.

*B. A. Hayes* and *Ralph Emery,* for plaintiff.

*C. S. Northup,* City Solicitor, and *O. W. Nelson,* for defendants.

WILDMAN, J.; PARKER, J., and HAYNES, J., concur.

Appeal from Lucas Common Pleas Court.

The case below was brought by Joseph W. Close, who sought by injunction to restrain the county officers from proceeding to collect a sewer assessment upon a large number of lots owned by him. These lots are situated in what is known as "Harvard Terrace," near Walbridge Park in this city. The case was tried in the court below and brought here by appeal. Assessments for the construction of two sewers are involved: one, known as sewer 930, designed for the local sanitary drainage of the lots of Harvard Terrace, and the other, No. 898, a main sewer and also a sanitary sewer.

The first substantial claim of the plaintiff to the equitable protection of the court is, that sewer 930 was not constructed according to contract, or according to the bids or advertisements for bids, and consequently that the assessments upon the lots are invalid.

It seems that during the construction of the work and after all that part of the sewer in the southern half of Harvard Terrace had been completed, and while the work was in progress upon that part of the sewer lying northerly of University Boulevard, by mistake of an assistant engineer the sewer was not laid at the depth contemplated by the contract and specifications, but was made several feet shallower. This mistake was not discovered until some time after the sewer was completed, as stated in paragraph 13 of the agreed statement of facts submitted to us. The evidence of witnesses has been taken on the trial before us to the effect that as complete drainage was effected for the benefit of the lots by the sewer as constructed as would have been by a sewer as contemplated and provided for under the contract; and witnesses have testified that in their judgment it was no more costly to construct, so that no more expense has been included in the assessment. It nowhere appears that any injury has been done to the petitioner by reason of this deviation from the contract in the construction of the improvement.

It is urged upon us that bidders should have had an opportunity to bid for the construction of the sewer in the manner and form in which it was constructed, and this may be true; but we have concluded that the irregularity is not such a one

as justifies the setting aside of the assessments.   The assessments are made for the actual expense only, and to disturb them upon this ground would result in a reassessment with the same result —unless the court went further and held all assessments invalid and took the position that no further power exists in the municipality to assess at all.   We think that this would be inequitable; it would leave the lot owner in possession of all the advantages derived from the construction of the sewer, and throw the entire burden of cost upon the city, upon no better ground than that there has been an inadvertance in the carrying out of a contract, which inadvertance has resulted in no substantial injury to any one.   The conclusion at which we arrive is in harmony with our holding in *Kohler Brick Co.* v. *Toledo*, 10 C. C. —N. S., 137.

In the first cause of action in plaintiff's petition and what is styled paragraph 2, it is alleged that the assessment was made according to benefits instead of being by foot frontage, and that by the terms of the assessment it was limited to abutting lots, thereby letting all the property included in Walbridge Park— which is on the other side of Broadway—escape assessment entirely, although it is said that it derives benefit from sewer 930, which is the sewer under consideration in this part of the first cause of action.   It does not appear, however, that the property in Walbridge Park is to be considered in any sense as "abutting property."   It is true that two connections have been made from structures in Walbridge Park by piping across Broadway to this sewer 930, but the sewer is constructed upon private right-of-way—it is not in the street known as Broadway, but lies in the interior of Harvard Terrace, running along the lot lines mainly, if not entirely, except where it crosses University Boulevard.   Now, if in seeking to assess all property benefited we go beyond the abutting property, it is a little difficult to tell where to stop; that is, if the court assumes that other property is so benefited that it was the duty of the assessing authorities to assess such other property, there would seem to be hardly a limit to the jurisdiction of the court as to the boundaries of territory which might be assessed to take care of a sani-

tary sewer like this. But whatever might be the rule if Wal-bridge Park were private property, it does not necessarily apply to a public park such as this.

There is a provision in the statute for payment of a part of the expenses of such improvement by the public, based upon the principle that the public does derive some benefit. Section 63 of the municipal code of 1902 (96 O. L., 43; Rev. Stat., 2276; 1536-223), may properly be considered as throwing some light upon the intention of the Legislature as to property of the character which we have here. "When the whole or any portion of an improvement authorized by this title passes by or through a public * * * park * * * or any other public * * * grounds within and belonging to the corporation, the council may authorize the proper proportion of the estimated costs and expenses of the improvement to be certified by the clerk of the corporation to the county auditor and entered upon the tax list of all taxable real and personal property in the corporation, and the same shall be collected as other taxes."

Now, if we apply the rule that the expression of one thing is the exclusion of all others of the same general class, we must by implication hold that the municipality may not assess the proportion of such estimated costs and expenses upon a public park, unless the improvement "passes by or through" the park. Now, what is meant by the expression "by"? The expression "through" will not apply—as this improvement nowhere passes through the park. That the park is in the neighborhood of the improvement, is true; but, according to the testimony of Mr. Consaul, the city engineer, at its nearest point to the sewer under consideration there is a distance of 150 feet, and the sewer can not be said to run "by" a park unless close proximity is to be so understood. We think, however, that what was contemplated by the legislators is that when an improvement either passes through a public park or the park abuts upon the improvement—when it runs alongside of it or through it—that then the park may be assessed.

Whether the park, if it were a private park, would have any access to this sewer so as to avail itself of the benefits of the sewer

without joining in the expense of construction, might be a very serious question, but one which we think we are not called upon to meet.

Our judgment is that the assessment can not be set aside upon the ground that the park should have been included in the property to be assessed.

It is claimed also in the petition that the assessment is invalid in that there is no deduction for intersections. In order that I may state the position of counsel for the plaintiff fairly, I read from his brief:

"Plaintiff claims that an intersection is formed by an improvement, whether paving, sewer or sidewalk, crossing a street. Counsel for the city claims that an intersection is formed by one street crossing another street, and relies upon the language of this provision as expressed in the Revised Statutes as they existed prior to the passage of the municipal code. That section was 2274, and reads, in part:

"'That when the council of a city, * * * determines to grade, pave, sewer or otherwise improve a street, alley or other public highway, * * * the council shall levy and assess a tax, * * * for the estimated cost and expense of so much of the improvement as may be included in the crossing or intersection of such street, alley, or highway.'

"This language seems to imply that the improvement intersects the street. If under the Revised Statutes the city paid for intersections only when the improvement was in a street, then we claim that the municipal code enlarges the number of intersections to be paid for by the city.

"From paragraph 8 of the agreed statement it appear that the city was not charged with the cost of any intersection.

"If the crossing of the streets by sewer 930 forms intersections under the terms of the statute, it is conceded in paragraph 7 of the agreed statement that the assessment is excessive by 9.93 per cent."

The provisions of the municipal code of 1902, relied upon by counsel as changing the character of an intersection the construction of which is to be paid for by the city, is Section 53 (Rev. Stat., 2373; 1536-213), which reads, in part:

"In all municipalities the corporation shall pay such part of the cost and expense of improvements for which special assess-

ments are levied as council may deem just, which part shall not be less than one-fiftieth of all such costs and expenses; and in addition thereto, the corporation shall pay the cost of intersections.''

It will be noted that the word ''intersections'' is here used without definition, but by the former statute were clearly contemplated, as counsel agree, improvements extending along or in streets, and the provision was that the city should pay the costs of such improvements in the squares made by the intersections of two streets. The examination that I have given to this matter leads my mind to the conclusion that the word had acquired at the time of the passage of the municipal code of 1902 a familiar meaning, and that it had reference to intersections of the character described in the statute in force up to and at the time of the passage of the municipal code;. and although the definition of ''intersections'' is dropped out, I think that the new section—53 of the code—still had reference to the same class of intersections that had been before known.

In the case of *Northern Ind. Ry.* v. *Connelly*, 10 Ohio St., 159, decided long before the passage of the law providing that the city should stand the cost of such intersections, the courts had under consideration the question as to how their cost should be assessed. A contention arose as to whether the cost should be paid by an assessment upon the property abutting on a street being improved, and it was indicated (p. 165) and in the later case of *Creighton* v. *Scott*, 14 Ohio St., 438, it was held:

''When in making such improvement, squares formed by the intersection of other streets, are crossed and improved, the city council may, if the object of improving the squares is the improvement of such street, assess the whole expense upon the same property on which the other expenses of such improvement are assessed.''

This entire legislation and adjudication as to intersections is based upon the idea that the part of the improvement at such intersections is connected with a street improvement to be paid for by assessment. If the property owners are benefited by the general street improvement, assessment is to be made upon such

property owners along the street where the other expenses are being assessed. Upon the same principle, if a sanitary sewer is, at the intersection, still for the benefit of the people whose land it drains, although it crosses the street, the owners of the property drained should equitably pay the expenses. The city derives no benefit from a sanitary sewer at the point of crossing a street. The city does not need it. It is not there to take off the surface water; it is not for the purpose of draining the street, but it is for the purpose of caring for the sanitary drainage of the lots which are assessed. Both upon authorities, so far as we are able to find them, and upon principle, as it seems to us, the cost of the improvement at the kind of intersection we have here should not be paid by the city. To the extent that the city is in any way benefited by this sanitary drainage, as I have already suggested, the city does pay one-fiftieth of the cost.

The assessment for the sewer 898 does include some amount which should be deducted, as is conceded by counsel, it being the amount claimed by plaintiff in his petition.

This would seem to dispose of the substantial questions which are involved in the inquiry. It was claimed in oral argument, as asserted in the petition, that the proceedings were irregular in one respect, to-wit, that the council omitted in the proceedings for the construction of main sewer 898 to assess the sum required to construct an ordinary sewer sufficient to drain the property. It was argued that this omission on the part of the council would necessitate the setting aside of the assessment and the ordering of a reassessment, but as this would not be especially beneficial to the plaintiff, by a paragraph in the brief before me the application to enjoin the assessment, or set it aside upon that ground, is withdrawn.

There is another reason why the relief would be refused—as has been indicated to counsel—and that is, that there is no evidence before us that the council did omit to determine such required sum. It was argued it being a sort of a negative, that plaintiff was not called upon to prove it; that it was sufficient for him to assert a negative in his pleading, making the claim, and then the duty would be devolved upon the defendant to show

the proper action of council in this regard. We, however, in a case in Wood county, *Westenhaver* v. *Hoytsville*, 8 C. C.—N. S., 284, took the opposite view and held that all claims of defects of proceedings of a municipality must be averred and proven; that the burden is still upon the plaintiff; that the court would not presume that the officers had omitted any duty. And in the case of *Bolton* v. *Cleveland*, 35 Ohio St., 319, the same principle was expressly and clearly enunciated:

"Where a party seeks, in equity, to enjoin the collection of an assessment by the city council, on the ground that the improvement was not recommended by the board of city improvements, he must show such fact by averment and proof."

There the question involved a negative, as here. It was just as true there as it can be here, that the knowledge of the facts was in possession of the counsel or of the defendants, and that if a particular action had been taken by the council, it was easy to show it by the records; yet the Supreme Court held that it was not incumbent upon the council to show that it had acted, but that it was incumbent upon the party attacking their proceedings to show the failure to act. On page 322, Judge Boynton, in announcing the opinion, says:

"Where a party seeks, in equity, to enjoin the collection of an assessment standing against him, or his property, on the duplicate of the county treasurer on the ground that it was illegally made, but which it was within the power of the board or tribunal causing it to be placed there to levy, he must show its invalidity by proper averment and proof. The assessment will be held valid until the contrary is made to appear. It, therefore, was not the duty of the defendants to show that the improvement was, in fact, recommended by the board of city improvements."

We think that there are no contentions in the petition that should prevail, and the judgment will be entered accordingly. The petition will be dismissed.